**GREAT AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**HOUSTON GENERAL INSURANCE COMPANY, Defendant.**

**No. 89 Civ. 4422 (PKL).**

United States District Court,
S.D. New York.

April 24, 1990.

Orenstein & Brown, New York City (Christopher B. Hitchcock, Eric B. Morrison, of counsel), for plaintiff.

Costello and Shea, New York City (Richard C. Browne, of counsel), Riddle & Brown, Dallas, Tex. (Brenda Neel Hight, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

This is a declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202. Defendant has moved for dismissal of the action or, alternatively, for transfer of the action to the United States District Court for the Northern District of Texas. For the reasons stated below, defendant's motion to dismiss is granted.

## BACKGROUND

The instant action arises out of reinsurance contracts between the parties. In 1975, Equitable General Group ("Equitable"), the corporate parent of defendant Houston General Insurance Company ("Houston General"), entered into two contracts with the Constellation Reinsurance Company of New York ("Old Constellation"), under which Old Constellation agreed to reinsure certain risks underwritten by Equitable. Old Constellation was a wholly-owned subsidiary of plaintiff Great American Insurance Company ("Great American"). The contracts, known as trea- ties, were negotiated for Old Constellation by its agent, Constellation Reinsco Inc. ("Reinsco"), and for Equitable by its intermediary, Wilcox, Baringer & Co., Inc. ("Wilcox, Baringer"). In mid–1975, Old Constellation merged into Great American and ceased to exist. When the reinsurance treaties were renegotiated in 1976 and 1977, Great American was substituted for Old Constellation as the reinsurer.

In June 1977, Great American created a new subsidiary, using the name Constellation. This new company was sold three months later to Ticor Corporation, a company based in California. As part of the sale, Great American ceded to Constellation all its reinsurance business, including the treaties with Equitable. Great American also provided Constellation with all existing loss reserves for the reinsurance business, and entered into an agreement with Constellation whereby Great American agreed to reinsure Constellation's liability on the reinsurance business in excess of the loss reserves.

In February 1987, Constellation was placed in liquidation by a New York State Court, in accordance with New York insurance law. Similar to a federal bankruptcy proceeding, the order of liquidation terminated Constellation's corporate existence and created a liquidation estate consisting of all remaining assets. Meanwhile, beginning in 1986, Houston General paid losses reinsured under the treaties. Houston General claims that Great American owes Houston General $365,024.48 under the reinsurance contracts. Houston General apparently initially made a demand on Great American through Wilcox, Baringer. Then, by letter dated May 24, 1989, Houston General, through its counsel, made a direct demand to Great American for payment. The letter indicated that if Great American did not make payment of the amount allegedly due by June 25, 1989, Houston General would consider filing suit for the amount in controversy. *See* Affidavit of Christopher B. Hitchcock, Esq., sworn to on September 7, 1989 ("Hitchcock Aff."), Exhibit B.

Great American responded to Houston General on June 21, 1989, indicating that it had been able to verify its liability on only $33,000 of the amount claimed. It admitted that it did owe that money, and stated that it was willing to pay that sum on condition that Houston General waive all claims against the estate of Constellation as to that amount. Great American then requested an additional sixty days to determine its liability as to the remaining amount demanded by Houston General. *See* Hitchcock Aff. Exhibit C. Houston General did not immediately respond to Great American's letter, and on June 23, 1989, two days after requesting an extension from Houston General, and apparently without again contacting Houston General regarding such an extension, Great American filed an action in this Court.

Great American's action was brought by way of order to show cause. As originally pleaded, Great American's claim was for interpleader relief pursuant to 28 U.S.C. § 1335 against both Houston General and the New York State Superintendent of Insurance, as liquidator of Constellation. Great American sought an injunction preventing institution of any actions regarding Houston General's claims under the reinsurance treaties. At the time of the issuance of the order to show cause, the Court entered a temporary restraining order preventing Houston General from filing any action against Great American or the Constellation liquidation estate regarding the claims under the treaties.

After some delay to allow sufficient time for submissions of papers on Great American's motion seeking injunctive relief and defendants' cross-motion to dismiss, a hearing was held before the Court on July 25, 1989 regarding the propriety of Great American's interpleader action. After hearing the arguments of counsel, the Court announced a decision which found that the interpleader action was improperly brought, and that, further, this Court should abstain from exercising jurisdiction over Great American's claims in light of the ongoing state liquidation proceedings which would adequately protect Great American's rights in relation to the Constellation liquidation estate. Thus, the Court dismissed the interpleader claims and vacated the temporary restraining order.

One day before the injunction hearing, Great American filed, as of right, an amended complaint which added a cause of action for a declaratory judgment against Houston General that Great American's liability to Houston General is limited to $33,-000. After the dismissal of the interpleader claims, only this declaratory judgment claim remains in this Court. On July 26, 1989, after the temporary restraining order was vacated by the Court, Houston General filed an action against Great American in Texas state court for the $365,024.48 that Houston General alleges it is owed. That action was subsequently removed by Great American to the United States District Court for the Northern District of Texas, Fort Worth Division, where it is still pending. Houston General then filed the instant motion to dismiss the remaining declaratory judgment action in this Court, or, in the alternative, to transfer it to the Northern District of Texas.

## DISCUSSION

Historically, federal district courts did not have the power to entertain declaratory judgment actions. In 1933, the Supreme Court held that review of a state declaratory judgment was within the judicial power, thus resolving doubts about the constitutionality of a declaratory judgment action in the federal courts. *Nashville, C. & S.L.R. Co. v. Wallace*, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933). The next year, Congress passed the Declaratory Judgment Act, now codified at 28 U.S.C. §§ 2201, 2202, permitting the federal courts to hear declaratory judgment actions. Fed.R.Civ.P. 57 makes all declaratory judgment actions subject to the Federal Rules of Civil Procedure.

The Second Circuit has recently explored the function of a declaratory judgment action.

The purpose of the [Declaratory Judgment Act] has been expressed in a variety of ways: "Essentially, a declaratory

relief action brings an issue before the court that otherwise might need to await a coercive action brought by the declaratory relief defendant," *Mobil Oil Corp. v. Long Beach*, 772 F.2d 534, 539 (9th Cir.1985); the fundamental purpose of the [Declaratory Judgment Act] is to " 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued'," *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) (quoting *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir.), *cert. denied*, 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937)); the primary purpose of the [Declaratory Judgment Act] is to have a declaration of rights not already determined, not to determine whether rights already adjudicated were adjudicated properly, *Hurley v. Lindsay*, 207 F.2d 410, 411 (4th Cir. 1953); the declaratory judgment procedure "creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it," Wright, *The Law of Federal Courts* § 100, at 671 (4th ed. 1983); the declaratory judgment procedure "enable[s] a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability," Borchard, *Declaratory Judgments* 280 (2nd ed. 1941). *United States v. Doherty*, 786 F.2d 491, 498–99 (2d Cir.1986) (Friendly, J.).

Section 2201 requires that a "case of actual controversy" exist before a party can bring a declaratory action. That is, "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immedia-cy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Further, a declaratory judgment action must have an independent basis for jurisdiction and venue, as 28 U.S.C. § 2201 does not create an independent basis for federal jurisdiction. *Warner–Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184, 186 (2d Cir.1977).

■ Even if the basic requirements for a declaratory judgment action are met, it is still within the discretion of the district court to decline to hear a declaratory judgment action, *Hartford Acc. & Indem. Co. v. Hop-On International Corp.*, 568 F.Supp. 1569, 1571–72 (S.D.N.Y.1983), particularly when there is a pending proceeding in another court, state or federal, that will resolve the controversies between the parties. *Ven–Fuel, Inc. v. Department of Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982), *citing Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir.1981) (pending state action); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir.1967), *cert. denied*, 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968) (pending federal action). The Second Circuit has explained that a declaratory judgment action should be entertained " 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969), *cert. denied*, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970), *quoting* E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941). *See also Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir.1986).

Plaintiff argues that this action fits the criteria for the exercise of the declaratory judgment powers as expressed in *Broadview*. Plaintiff states that the instant action is designed to clarify the legal relationship between the parties and will terminate and grant relief from the uncertainty which

gave rise to the need to bring the action. Further, plaintiff contends that the Court should give great weight to the fact that the action in this Court was filed before the parallel action in Texas.

■ Plaintiff's reading of the *Broadview* standard is overly rigid. Where the law provides district courts with discretionary powers, the district courts should exercise that statutory authority with the same care and concern as they apply the principles of equity. The Court, thus, must look at more than just the mechanical application of the declaratory judgment standard. The Court must look at the litigation situation as a whole in determining whether it is appropriate for the Court to exercise its jurisdiction over the declaratory judgment action before it. *See State Farm Fire & Casualty Co. v. Taylor,* 118 F.R.D. 426, 429 (M.D.N.C.1988).

■ In the instant case, an examination of the history of the litigation between the parties militates in favor of dismissal of the instant declaratory judgment action. This case was originally filed on June 23, 1989 as an interpleader action. The claim for a declaratory judgment against Houston General was not added until July 24, 1989, one day before the Court heard the motion of defendants in the interpleader action to dismiss plaintiff's claims. From June 23, 1989 to July 25, 1989, Houston General was restrained by order of this Court from filing any action on its claims against Great American. When that stay was lifted, Houston General filed its claims the next day in Texas state court. Houston General did not file those claims prior to filing the instant action because it had voluntarily agreed not to file an action against Great American until June 25, 1989. *See* Hitchcock Aff., Exhibit B.

■ It appears to the Court that plaintiff's filing of this action on June 23, 1989, by way of order to show cause with a request for a temporary restraining order to stay further litigation, was intended to short-circuit the suit which Houston General eventually brought in Texas. The mere fact that Great American managed to get to a courthouse before Houston General

and to obtain a stay of further litigation is not a reason for this Court to entertain its declaratory judgment action. While generally a court will give weight to the fact that the declaratory judgment action was filed first, the first-filed rule should not be applied mechanically. *See, e.g., Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 749–50 (7th Cir.1987).

The Second Circuit faced a situation similar to the instant action in *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). In *Factors,* plaintiff filed its declaratory judgment action in anticipation of a suit by defendant. Indeed, as in the instant case, the plaintiff in *Factors* had received a notice of suit letter from the defendant and filed its declaratory judgment action in anticipation of that suit by the defendant. In upholding the district court's dismissal of the declaratory judgment action, the Second Circuit stated that "When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiff's chosen forum. As Mr. Justice Brennan has observed, '[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses.' *Perez v. Ledesma,* 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 694 n. 2, 27 L.Ed.2d 701 (1971) (Brennan, J. dissenting)." 579 F.2d at 219 (citations omitted).

■ Rejection of the first-filed rule in the instant case is supported by the general principles of the Declaratory Judgment Act. A declaratory judgment is an opportunity for a party to a ripe legal controversy to have that controversy resolved by a Court promptly rather than waiting for the opposing party, with the ripe substantive right to sue, to choose to exercise its rights to judicial intervention, particularly where the delay in seeking judicial intervention will cause substantial prejudice to the declaratory judgment plaintiff. The intent is to allow a party to be free from the whim of its opponent in deciding when to resolve the legal dispute between them.

The facts of the instant case are clear: plaintiff received notice that, absent a satisfactory resolution, defendant would file an action against plaintiff in Texas on June 25, 1989. On June 21, 1989, plaintiff informed defendant that there would not be an immediate resolution of the matter between them and requested a sixty-day extension. Within forty-eight hours of that letter, without having heard from defendant or apparently attempting to make further contact with defendant, plaintiff filed the instant action and obtained a temporary restraining order against the filing of any other actions, including the one defendant had already noticed. There is no evidence that defendant Houston General had in any way slept on its rights against plaintiff so as to cause prejudice to plaintiff prior to the filing of the instant action.

Indeed, it appears that this is a classic example of a race to the courthouse. Plaintiff knew that defendant would file an action in Texas if it did not manage to file the instant action first. The Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions. *See Casualty Indem. Exchange v. High Croft Enterprises, Inc.,* 714 F.Supp. 1190, 1193–94 (S.D.Fla.1989). In fact, the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.

Plaintiff argues that all of defendant's claims and rights can be heard in the instant action by way of counterclaim. However, this is not a strong argument for retention of this action. Plaintiff's interests can be adjudicated in the pending Texas action, for the subject of that coercive action is the same as that which plaintiff seeks a declaration on from this Court. Further, plaintiff argues that this Court has developed a substantial familiarity with this action that will allow it to adjudicate the matter at hand more efficiently than the Texas court. This argument is without significant merit. While the Court has knowledge of the background of this action, it has little knowledge of the allegations contained in plaintiff's declaratory judgment action, or of the counterclaims that would inevitably be brought by defendant. Indeed, neither the declaratory judgment action nor any prospective counterclaims were the subject of the Court's previous rulings in this action.

Thus, the Court finds that it is not appropriate for the Court to entertain the instant declaratory judgment action. There is a pending coercive action in the United States District Court for the Northern District of Texas that will provide plaintiff in the instant action with every opportunity to protect the rights that it sought adjudicated in the instant action.[1] In an effort to protect the rights of both parties, defendant is instructed to inform the United States District Court of the Northern District of Texas of this Court's opinion in a timely fashion.[2]

## CONCLUSION

Defendant's motion to dismiss plaintiff's declaratory judgment action is granted. The above-captioned action is dismissed in its entirety.

SO ORDERED.

---

1. As the Court has dismissed plaintiff's declaratory judgment action, the only remaining cause of action before the Court in the above-captioned case, the Court need not reach defendant's alternative motion to transfer this action to Texas.

2. The Court understands that the parallel action in the Northern District of Texas has been stayed pending the decision of this Court on the instant motions.