**BEN & JERRY'S HOMEMADE, INC., Plaintiff,**

v.

**LA SOUL, INC., Defendant.**

No. 2:95–cv–304.

United States District Court, D. Vermont.

Oct. 14, 1997.

**500**

Robert S. DiPalma, Paul, Frank & Collins, Inc., Burlington, VT, Douglas H. Meal, Douglas H. Driemeier, Kevin J. O'Connor, Robert A. Skinner, Ropes & Gray, Boston, MA, for Plaintiff.

William Michael McCarty, Jr., McCarty Law Offices, Brattleboro, VT, Lewis J. Pepperman, Donald B. Brenner, Stark & Stark, Princeton, NJ, for Defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

In this action brought by ice cream manufacturer Ben & Jerry's Homemade, Inc. ("B & J") against one of its former suppliers, La Soul, Inc. ("La Soul"), La Soul moves this Court to abstain from exercising jurisdiction over the proceeding (paper 79), and B & J moves for summary judgment on Count III or in the alternative for a *nisi* decree that summary judgment will enter on Count III if La Soul fails to file compulsory counterclaims (paper 70). For the reasons that follow, La Soul's motion is granted in part and denied in part. B & J's motion for summary judgment on Count III or in the alternative motion for a *nisi* decree is denied as moot.

### I. *Factual Background*

Beginning in 1992, B & J and La Soul entered into an agreement in which La Soul would supply apple pie filling and crust for B & J to use in producing its "Apple Pie" frozen yogurt. La Soul is a New Jersey corporation formed by the Reverend James Carter as a minority owned baking company with the social mission of providing employment for recovering drug addicts and alcoholics.

Between 1993 and 1995, the business relationship between B & J and La Soul was beset with problems: according to B & J, La Soul had difficulty with manufacturing quality control, which interfered with its ability to fill B & J's orders. According to La Soul, B & J's ordering practice was so erratic as to devastate the fledgling business, which was forced one month to lay off its fragile employees and the next month to hire them back and pay overtime.

By 1995, La Soul was in desperate financial trouble. In April 1995, according to its amended complaint, B & J informed La Soul that it was discontinuing production of its Apple Pie frozen yogurt, because consumer demand was insufficient. On or about April 11, 1995, B & J provided $15,000.00 to La Soul, pursuant to a written agreement dated April 10, 1995 and signed by La Soul's president and chief executive officer, Reverend Carter. The written agreement stated that the $15,000.00 plus interest would be repaid no later than September 11, 1995. On or about April 21, 1995, B & J provided another $15,000.00 to La Soul, pursuant to a written agreement dated April 20, 1995 and signed by Reverend Carter. This sum was to be repaid no later than September 21, 1995. According to B & J, this money, and other sums advanced to La Soul over the course of the business relationship, have not been repaid.

On August 29, 1995, the Tinton Falls State Bank, a major creditor of La Soul, filed suit against Reverend Carter and La Soul in the Superior Court of New Jersey, Monmouth County, seeking repayment of funds loaned to La Soul to finance the venture with B & J. *Tinton Falls State Bank v. Carter*, No. Mon-L–4591–95 (N.J.Super. filed Aug. 29, 1995).

In connection with that case, La Soul drafted a third-party complaint against B & J, asserting that B & J is liable for any sums which La Soul or Reverend Carter may be ordered to pay to the bank, on a variety of legal theories, including but not limited to breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, breach of partnership agreement, and economic duress.

La Soul's attorneys forwarded a copy of the draft third-party complaint to B & J, along with a cover letter offering to enter into settlement negotiations before filing the pleading. Attorneys for La Soul and B & J agreed that La Soul would delay filing its pleading until after October 10, 1995. On October 11, B & J commenced this action against La Soul in the United States District Court for the District of Vermont. La Soul filed its answer and third-party complaint against B & J in the New Jersey court on October 12, 1995:

B & J's amended complaint, filed March 26, 1996, alleges six counts of breach of contract, a claim for restitution, a claim for "balance due," a claim of breach of warranty, and a request for declaratory judgment. The declaratory judgment count (Count III) seeks a ruling from this Court that B & J has not breached any legal duties to La Soul and is not liable to La Soul for any of its losses or debts.

La Soul has asked this Court to abstain from exercising jurisdiction over this case, either by stay or by dismissal of the action, in favor of the litigation pending in the New Jersey Superior Court. B & J has moved for summary judgment on Count III, or in the alternative for an order requiring La Soul to plead its compulsory counterclaims in this matter.

## II. *Discussion*

### A. *The Colorado River Doctrine*

As the Supreme Court stated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.... Abdication of the obli-

gation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Id.* at 813, 96 S.Ct. at 1244. Generally, the mere fact that a parallel case is proceeding in state court will not justify abstention. *Id.* at 817, 96 S.Ct. at 1246.

In *Colorado River,* the Supreme Court acknowledged that in situations involving the contemporaneous exercise of concurrent jurisdiction in state and federal courts, considerations of wise judicial administration may justify deferring to state court proceedings, but only in exceptional circumstances. *Id.,* at 817–18, 96 S.Ct. at 1246–47. There are six factors for a court to consider in determining whether a dismissal or stay is proper under *Colorado River,* "with the 'balance heavily weighted in favor of the exercise of jurisdiction.'" *Burnett v. Physician's Online, Inc.,* 99 F.3d 72, 76 (2d Cir.1996) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983)). The six factors are:

1) the assumption of jurisdiction by either court over any res;

2) the inconvenience of the federal forum;

3) the avoidance of piecemeal litigation;

4) the order in which jurisdiction was obtained;

5) whether state or federal law supplies the rule of decision; and

6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Burnett,* 99 F.3d at 76.

A threshold question, however, is whether the federal action and the state action are truly concurrent. Cases are concurrent when they involve essentially the same parties and the same claims. *National Union Fire Ins. Co. v. Karp,* 108 F.3d 17, 22 (2d Cir.1997); *Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 17 F.3d 46, 50 (2d Cir. 1994). With regard to this threshold issue, the breach of contract counts, the restitution count, the balance due count, and the breach of warranty count, while they involve essen-

tially the same parties and largely the same subject matter, do not involve the same claims as the New Jersey action. In these federal counts, B & J seeks economic damages from La Soul of approximately $67,-000.00. In the state action, La Soul seeks judgment against B & J for any sums which La Soul is found to owe to the Tinton Falls State Bank. It is not clear that B & J's claims against La Soul will be litigated in the New Jersey action. These federal counts are thus not concurrent with La Soul's New Jersey action.

■ If the state and federal proceedings are not concurrent, dismissal or stay under *Colorado River* is not appropriate. *Farkas v. D'Oca,* 857 F.Supp. 300, 303 (S.D.N.Y. 1994). But even were these federal counts and the state action deemed concurrent, dismissal or stay is still not warranted, because application of the six factors does not disclose exceptional circumstances that would justify abstaining on these counts. The first factor, jurisdiction over a res, is not applicable here. The second factor, inconvenience of the federal forum, favors neither forum; the New Jersey state court is as inconvenient to B & J as the District Court of Vermont is to La Soul.

There is some risk of piecemeal litigation if the case proceeds in both courts. But this third factor is implicated virtually every time there are parallel state and federal proceedings. It will not alone support abstention. *See Ryan v. Johnson,* 115 F.3d 193, 198 (3d Cir.1997) (if concurrent state-federal litigation satisfies *Colorado River*'s 'piecemeal adjudication' test, test swallows up principle that pendency of state action is no bar to similar proceedings in federal court).

Both parties argue vigorously that their suits were filed first: La Soul submits that the New Jersey court ruled on February 2, 1996 that under New Jersey law the commencement date of the third-party complaint was that of the filing of the original complaint, or August 29, 1995. B & J points out that this Court ruled on October 25, 1996 that the federal action was filed first, on October 11, 1995 one day before the third-party complaint was filed in New Jersey. Even were the Court to reverse itself on the

issue of which action was filed first, this factor would not necessarily weigh in favor of abstention. Priority of suit is not measured exclusively by which complaint is filed first, but also by how far each of the suits has progressed. *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939–40. Until recently, the cases were on parallel discovery tracks; it now appears that the federal case will be ready for trial sooner. This factor thus does not support abstention.

As to the fifth factor, state law will supply the rule of decision, but it is not clear at this stage of the litigation whether New Jersey or Vermont state law will apply. In any event, the issues presented are not novel, unique or complex, and only in rare circumstances will the presence of state law issues weigh in favor of surrender of jurisdiction. *Id.* at 26, 103 S.Ct. at 942.

Finally, the state court proceeding is certainly adequate to resolve the parties' dispute, but "this factor is significant only if it militates in favor of federal jurisdiction." *Zemsky v. City of New York,* 821 F.2d 148, 152 (2d Cir.1987). Having considered the factors, noting that at best some of the factors weigh only slightly in favor of deferring to the state court proceedings, this Court concludes that on the whole there are no exceptional circumstances here which can overcome the "heavy presumption favoring the exercise of jurisdiction." *Bethlehem Contracting Co. v. Lehrer/McGovern,Inc.,* 800 F.2d 325, 327 (2d Cir.1986).

### B. *Abstention under Wilton*

■ The declaratory judgment count (Count III) stands in a different posture before this Court, however. In this count B & J asks the Court to declare that it has not breached any legal duty nor incurred any liability with regard to La Soul. This claim is a direct parallel to the fourteen count third party complaint filed by La Soul against B & J in the NJ action, and was obviously filed in this Court as a "defensive tactical maneuver," in reaction to La Soul's expected claim. *See Moses H. Cone,* 460 U.S. at 17, n. 20, 103 S.Ct. at 937 n. 20.

The Declaratory Judgment Act confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants; consequently a district court's decision to abstain in a declaratory judgment action is governed by the discretionary standard set forth in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). *Wilton v. Seven Falls Co.*, 515 U.S. 277, 285–87, 115 S.Ct. 2137, 2141–43, 132 L.Ed.2d 214 (1995). This Court is under no compulsion to exercise jurisdiction over a declaratory judgment claim: "ordinarily it would uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175–76.

In *National Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir.1997), a panel of the United States Courts of Appeals for the Second Circuit considered whether a district court can abstain from the declaratory relief claims included in an action as a matter of its discretion pursuant to *Wilton*, or whether it must apply the "exceptional circumstances" standard of *Colorado River*. The Court held that the rationale underlying *Wilton*'s holding, that the district court is afforded broad discretion under the Declaratory Judgment Act, is applicable to a claim for declaratory relief, whether raised alone or in the context of other non-declaratory claims. *Id.* at 21.

In deciding whether to abstain under *Wilton* and *Brillhart*, a court should examine the scope of the pending state court proceeding and the nature of defenses open there; consider whether the claims of all parties can satisfactorily be adjudicated in that proceeding; whether necessary parties have been joined; and whether they are amenable to process. *Wilton*, 515 U.S. at 283–84, 115 S.Ct. at 2141. B & J's declaratory judgment count seeks a resolution of all matters raised by La Soul in the New Jersey action; the scope of the pending state court proceeding thus precisely defines the scope of the declaratory judgment count. There is no indication that B & J is precluded from raising any defenses it may choose to, that any party may not obtain adjudication of all of its claims in the state forum, that necessary parties have not been joined, or that any party is not amenable to process. The fact that B & J apparently made a strategic decision to forego filing third-party counterclaims in the New Jersey action is immaterial to this analysis.

In addition, the history of the litigation between these parties weighs in favor of dismissing the declaratory judgment count. This case was originally filed on October 11, 1995, following receipt of La Soul's draft third-party complaint against B & J, and one day after the agreed-upon deadline for B & J to respond to La Soul's offer to enter into settlement negotiations. La Soul then filed its third-party complaint on October 12, 1995, immediately upon learning of B & J's suit. It appears to this Court, as it did to the district court in *Great American Insurance Co. v. Houston General Insurance Co.*, 735 F.Supp. 581 (S.D.N.Y.1990), "that this is a classic example of a race to the courthouse." *Id.* at 586. Such procedural manipulation is appropriately considered in deciding whether to dismiss a request for federal declaratory relief. *Id.* at 585–86. *See also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) (declaratory judgment action having been triggered by a notice letter is equitable factor in permitting later filed action to proceed).

Accordingly, having examined these factors, and in the interests of wise judicial administration, this Court will dismiss the declaratory judgment count in this action.

### C.  *Summary Judgment on Count III*

Count III having been dismissed, B & J's motion for summary judgment or in the alternative for a decree *nisi* is denied as moot.

### III.  *Conclusion*

La Soul's Motion for Stay or Order for Abstention (paper 79) is granted in part and denied in part. B & J's motion for summary judgment on count III (paper 70) is denied as

moot. Count III of B & J's amended complaint (paper 19) is dismissed.