**CEPHALON, INC., Plaintiff,**

v.

**The TRAVELERS COMPANIES, INC., et al., Defendants.**

**No. 12 Civ. 5395 (RJS).**

United States District Court, S.D. New York.

March 15, 2013.

Erica June Smith–Klocek, J. Gordon Cooney, Jr., Steven A. Reed, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Katherine Cecilia Milgram, Michael Stephan Kraut, Morgan, Lewis & Bockius LLP, New York, NY, for Plaintiff.

James Joseph Reardon, Jr., Katherine Scanlon, Reardon Scanlon Vodoloa LLP, West Hartford, CT, William Louis Hurlock, Seiger Gfeller Laurie LLP, New York, NJ, for Defendants.

MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Cephalon, Inc. ("Cephalon") brings this action against The Travelers Companies, Inc. ("Travelers, Inc.") and four of its subsidiaries, Travelers Indemnity Company, Travelers Casualty and Surety Company, St. Paul Fire and Marine Insurance Company, and The Standard First Insurance Company (collectively, "Travelers"), seeking a declaratory judgment that Cephalon's off-label promotion of the pain-management drug Actiq did not violate the Food, Drug and Cosmetics Act (the "FDCA") and that such pro-

motion did not cause injury to Travelers. Before the Court is Travelers' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or to transfer the case pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the Court grants Travelers' motion to dismiss.

### I. BACKGROUND [1]

On May 23, 2012, Travelers, Inc., an insurance company incorporated in Minnesota with its principal place of business in New York, sent pre-suit settlement correspondence to Cephalon, a pharmaceutical manufacturer incorporated in Delaware with its principal place of business in Pennsylvania, accusing Cephalon of improperly promoting off-label use of its pain-management drug Actiq.[2] (Am. Compl. ¶¶ 2–3, 13, 17–19.) Specifically, the letter, sent by in-house counsel, alleged that, though the FDA had approved Actiq solely for use as a pain-management drug in late-stage cancer patients, Cephalon had improperly promoted the drug as a general-use pain medication, harming Travelers, Inc., which, as a workers' compensation insurance carrier, had paid out numerous claims for off-label use of the drug. (*See* Reardon Decl. Ex. 3.) Accordingly, Travelers, Inc. demanded $17.5 million in compensation for the prescription reimbursements it had issued as a result of Cephalon's off-label promotions. (*Id.*) The letter warned that damages continued to accumulate at approximately $20,000 per week and requested that Cephalon "contact [Travelers, Inc.] by no later than June 15, 2012, so that [the parties could] discuss this matter further." (*Id.*)

---

1. The facts are taken from the Amended Complaint ("Am. Compl."), Defendants' Memorandum of Law ("Mem."), Plaintiff's Memorandum in Opposition ("Opp'n"), Defendants' Reply ("Reply"), and the declarations and exhibits attached thereto.

2. Travelers, Inc. sent the letter to Teva USA, Cephalon's parent corporation, which then forwarded the letter to Cephalon. (*See* Decl. of James J. Reardon, Jr., dated Nov. 15, 2012, Doc. No. 36 ("Reardon Decl."), Exs. 2–3.) However, for clarity's sake, the parties to this action are referred to as sender and receiver.

On June 7, 2012, Cephalon responded briefly, stating that the letter "contain[ed] numerous factual and legal mistakes" and that "a detailed response to them would not be productive." (*Id.* Ex. 2.) Cephalon concluded that the "claims ha[d] no merit" and "accordingly, . . . decline[d the] offer." (*Id.*)

On June 29, 2012, Travelers, Inc. replied with a letter from retained counsel. (*Id.* Ex. 3.) In the letter, Travelers, Inc.'s attorneys (1) advised that they had been retained "in connection with pursuing possible litigation"; (2) questioned the dismissive tone of Cephalon's response given ongoing Actiq litigation "including, but not limited to, the [action] pending in the Eastern District of Pennsylvania"; and (3) asked that Cephalon reply to the letter "no later than July 13, 2012 so that [the parties] may further discuss this matter. Should [Cephalon] fail to do so, Travelers[, Inc. would] have no alternative but to commence suit in an appropriate court of law." (*Id.*)

Cephalon did not respond. Instead, on July 12, 2012, it filed this declaratory action, claiming that (1) there is no private right of action under the FDCA; (2) it had not caused injury to Travelers, Inc.; and (3) Travelers, Inc. had suffered no injury. (*See* Compl., dated July 12, 2012, Doc. No. 1 ("Compl."), at 5.) In its Complaint, Cephalon quoted the pre-suit correspondence, grounding its claim in the fact that "Travelers[, Inc.] has also threatened Cephalon that 'it has every intention of pursuing its claims to recover the losses it sustained,' and that if it does not hear from Cephalon by July 13, 2012, it 'will have no alternative but to commence suit in an appropriate court of law.' " (Reardon Decl. Ex. 3; *see* Compl. Ex. A.)

Two weeks later, on July 24, 2012, Travelers, Inc.'s four subsidiaries—though not Travelers, Inc. itself—filed suit against Cephalon in the Eastern District of Pennsylvania asserting multiple state claims arising from the same course of conduct at issue in this action. (*See* Reardon Decl. Ex. 1.) The subsidiaries also named Cephalon's parent companies, Teva, Inc. and Teva USA, as defendants. (*Id.*) Teva, Inc. is an Israeli corporation with its principal place of business in Israel, while Teva USA is a Delaware corporation with it principal place of business in Pennsylvania. (*Id.*) Each of the Travelers, Inc. subsidiaries are Connecticut corporations with their principal places of business in Connecticut. (*Id.*) The Eastern District of Pennsylvania was the site of a number of civil suits against Cephalon related to Actiq, including at least one pending action that is proceeding toward class certification and trial. *See In re Actiq Sales & Mktg. Practices Litig.*, No. 07 Civ. 4492(PBT), 2012 WL 2135560 (E.D.Pa. June 13, 2012).

Thereafter, on September 20, 2012, Cephalon amended its Complaint to include the four Travelers, Inc. subsidiaries as defendants. (Doc. No. 20.) Cephalon also added factual content to its Complaint and removed the quote from Travelers, Inc.'s June 29, 2012 pre-suit letter. (*See* Reardon Decl. Ex. 5 (comparing Initial and Amended Complaints).)

Travelers filed the instant motion on November 15, 2012. (Doc. No. 34.) Cephalon responded on December 17, 2012, and Travelers replied on December 28, 2012. (Doc. Nos.37, 41.) The Court heard argument on January 25, 2013.[3]

---

3. Cephalon moved to dismiss, transfer, or stay the Eastern District of Pennsylvania action on October 9, 2012. The motion has been fully briefed and was argued on November 6, 2012.

However, that motion remains unresolved. (*See* Tr., dated Jan. 25, 2013 ("Tr."), 2:25–4:1.)

## II. Discussion

■ In its motion to dismiss, Travelers argues that the Court should decline to exercise jurisdiction over Cephalon's action because (1) the action is improperly anticipatory, (2) it is motivated by forum shopping alone, (3) the balance of conveniences weighs in favor of the Eastern District of Pennsylvania action, and (4) allowing the action to proceed would be contrary to public policy. Alternatively, Travelers argues that the Court should transfer the action because the transfer factors favor the Eastern District of Pennsylvania as the appropriate forum. For the following reasons, the Court grants Travelers' motion to dismiss solely on the ground that Cephalon's declaratory action was improperly anticipatory.

\*     \*     \*

■ The first-filed rule dictates that "[w]here there are two competing lawsuits, the first suit should have priority" in order to avoid duplicative litigation and honor the plaintiff's choice of forum. *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.,* 522 F.3d 271, 274–75 (2d Cir.2008). While the rule requires a "general presumption" that a first-filed suit has priority, the presumption is not "applied in a rigid or mechanical way." *Dornoch Ltd. v. PBM Holdings, Inc.,* 666 F.Supp.2d 366, 369 (S.D.N.Y.2009) (internal quotation marks omitted). Instead, the Second Circuit has recognized limited exceptions "where 'special circumstances' warrant giving priority to the second suit." *Emp'rs Ins. of Wausau,* 522 F.3d at 275. "Special circumstances," while "rare," include when a "first-filed lawsuit is an improper anticipatory declaratory judgment action." *Id.* at 275–76.

■ Generally, courts are empowered to "declare the rights and other legal relations of any interested party seeking such [ a] declaration" in "a case of actual contro-versy." 28 U.S.C. § 2201(a). However, the "federal declaratory judgment is not a prize to the winner of a race to the court-houses." *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir.1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.,* 894 F.2d 579, 586 (2d Cir. 1990). Accordingly, courts may consider "equitable, prudential, and policy arguments" in determining whether to entertain a declaratory action, *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 136, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), "particularly when there is a pending proceeding in another court, state or federal, that will resolve the controversies between the parties," *Great Am. Ins. Co. v. Houston Gen. Ins. Co.,* 735 F.Supp. 581, 584 (S.D.N.Y.1990); *see also Amusement Indus., Inc. v. Stern,* 693 F.Supp.2d 301, 311 (S.D.N.Y.2010) (collecting cases). "A rush to file first in anticipation of litigation in another tribunal, thereby enabling a potential defendant to choose the forum and governing law by which to adjudicate the dispute, and otherwise to interfere with or frustrate the other party's pursuit of claims elsewhere, is one of the equitable considerations a court may weigh in ruling on a request for declaratory relief." *Dow Jones & Co., Inc. v. Harrods, Ltd.,* 237 F.Supp.2d 394, 440 (S.D.N.Y.2002). Thus, if a declaratory action is filed as "a means of gaining a procedural advantage and preempting the forum choice of the complainant in a coercive action, . . . the coercive suit is given precedence." *Reliance Ins. Co. v. Bend'N Stretch, Inc.,* 935 F.Supp. 476, 478 (S.D.N.Y.1996).

■ In the Second Circuit, a suit is improperly anticipatory if it was "filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." *Emp'rs Ins. of Wausau,* 522 F.3d at 276. "The Second Circuit has held that the

filing of a declaratory judgment action triggered by a notice letter is a persuasive indicator of anticipatory conduct." *Chicago Ins. Co. v. Holzer*, No. 00 Civ. 1062(SAS), 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000) (citing *Factors Etc., Inc.*, 579 F.2d at 219 ("[A] notice letter ... may be a factor in the decision to allow the later filed action to proceed.")). "When a notice letter informs a defendant of [ (1) ] the intention to file suit, [ (2) ] a filing date, and/or [ (3) ] a specific forum for the filing of the suit, the courts have found, in the exercise of discretion, in favor of the second-filed action." *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F.Supp. 486, 491 (S.D.N.Y.1995); *accord, e.g., Mondo, Inc. v. Spitz*, No. 97 Civ. 4822(LAP), 1998 WL 17744, at *2 (S.D.N.Y. Jan. 16, 1998). "While it may be preferable for the notice to cover all three bases, any of the factors is sufficient to provide adequate notice." *Chicago Ins. Co.*, 2000 WL 777907, at *3.

Courts in this district have thus routinely dismissed declaratory actions that were prompted by receipt of a notice letter. In *Factors Etc., Inc.*, the district court declined to dismiss a later-filed action where the first-filed declaratory action had followed on the heels of a cease-and-desist letter informing the defendant of the plaintiff's intention to sue to protect its copyright. 579 F.2d at 217. The Second Circuit affirmed, noting that the defendant's declaratory action had been filed "in apparent anticipation" of litigation because it was "triggered by a notice letter." *Id.* at 219. Similarly, in *CGI Solutions, LLC v. Sailtime Licensing Group, LLC*, the court dismissed a declaratory action filed after the plaintiff had received a letter informing it that the defendant intended to "pursue all civil remedies available [and] ... [might] file a lawsuit" for specific causes of action and seeking certain relief. No. 05 Civ. 4120(DAB), 2005 WL 3097533, at *3–4 (S.D.N.Y. Nov. 17, 2005). In *Federal Ins.*

*Co. v. May Dep't Stores Co.*, the court dismissed a declaratory action where the plaintiff filed suit four days prior to a "drop-dead" date in a notice letter. 808 F.Supp. 347, 350 (S.D.N.Y.1992). And in *242 Partners, L.P. v. Gelb*, the court dismissed a declaratory action as motivated by "procedural gamesmanship and a sprint to the courthouse" when the defendant had notified the plaintiff by letter of his intent to file suit within thirty days if his demands were not met. No. 12 Civ. 2561(HB), 2012 WL 2309060, at *2 (S.D.N.Y. June 18, 2012); *see also AFA Dispensing Grp. B.V. v. Anheuser–Busch, Inc.*, 740 F.Supp.2d 465, 470–71 (S.D.N.Y. 2010); *Chicago Ins. Co.*, 2000 WL 777907, at *3; *Mondo, Inc.*, 1998 WL 17744, at *2.

Where courts have entertained a declaratory action despite the plaintiff's receipt of pre-suit correspondence, all three indicia of impending litigation have been absent. For instance, in *Employers Insurance of Wausau*, the Second Circuit reversed dismissal of a declaratory action despite the fact that the plaintiffs had received a string of pre-suit correspondence because the letters merely sought information and settlement negotiations; they did not specify claims, nor a date or forum for filing. 522 F.3d at 276. Additionally, correspondence between the parties stretched out for nearly a year. *Id.* Thus, the Second Circuit noted that "[a]lthough litigation was clearly on the horizon ... there was no notice letter or other communication conveying a specific threat of litigation." *Id.* Similarly, courts have declined to find actions improperly anticipatory where letters only "mentioned the general possibility of future legal action," but did not specify specific claims, nor a date or forum for filing. *Fandino v. Amalgam Entm't, LLC*, No. 09 Civ. 8325(SAS), 2010 WL 607819, at *3 (S.D.N.Y. Feb. 19, 2010).

Given these parameters, the Court concludes that Cephalon's action is plainly anticipatory. Travelers' June 29, 2012 letter to Cephalon was written by outside counsel, referenced a cause of action under the FDCA, cited ongoing Actiq litigation in the Eastern District of Pennsylvania and other fora, and provided a drop-dead date for Cephalon's reply lest "Travelers have no alternative but to commence suit in an appropriate court of law." Cephalon filed its action one day prior to that date and confirmed in its Complaint that Travelers' notice letter prompted its suit. (*See* Reardon Decl. Ex. 3 ("Travelers also has threatened Cephalon that 'it has every intention of pursuing its claims to recover the losses it sustained,' and that if it does not hear from Cephalon by July 13, 2012, it 'will have no alternative but to commence suit in an appropriate court of law.' ").) While Travelers did not specify a precise date or forum for filing, it provided a date certain to preempt litigation and specifically cited the Eastern District of Pennsylvania. Further, a date and forum are not fixed prerequisites, but mere indicia of notice—Travelers' clear statement of its "intention to file suit" and Cephalon's admission that it acted on that threat are sufficient to render Cephalon's action improperly anticipatory.[4] *See Chicago Ins. Co.*, 2000 WL 777907, at *3.

Because Cephalon's action was "filed in response to a direct threat of litigation that g[ave] specific warnings as to deadlines and subsequent legal action," *Emp'rs Ins. of Wausau*, 522 F.3d at 276, the Court concludes that it is improperly anticipatory. For that reason, Travelers' motion to dismiss is granted.

---

4. Cephalon endeavors to avoid this conclusion by analogizing its action to *Oleg Cassini, Inc. v. Serta, Inc.*, in which the court dismissed a second-filed action because the pre-suit correspondence did not present an "explicit, direct, and particularized threat of litigation." No. 11 Civ. 8751(PAE), 2012 WL 844284, at *5–6 (S.D.N.Y. Mar. 13, 2012). Specifically, the court determined that the letters were mere "lever[s] in ongoing negotiations" because they failed to cite a specific date or forum for filing, threatened generally to "proceed to file suit," and were followed by telephonic settlement negotiations. *Id.* To the extent *Cassini* reiterates the proposition that letters must provide more than a "general threat of litigation" to trigger notice of suit, it does not alter the Court's conclusion. If, instead, the case requires a notice letter to state a date or forum for filing to render an action anticipatory, the Court deems it out of step with numerous rulings in this district and contrary to the obvious purpose of the first-filed rule.