386

**HUDSON COUNTY NEWS COMPANY**
and Holyoke News Company, Inc.,
Plaintiffs,

v.

**METRO ASSOCIATES, INC.,** Metro
News, Inc., Metro Leasing, Inc., Lewis
A. Black, Sara Black, Achille A. Apicella and Einbinder, Young & Apicella,
P.C., Defendants.

Civ. A. No. 91–10124.

United States District Court,
D. Massachusetts.

March 19, 1992.

David P. Grossi, Bowditch & Dewey, Worcester, Mass., for plaintiff Hudson County News Co.

Cheryl A. Enright, Morrison, Mahoney & Miller, Boston, Mass., for defendants Achille A. Apicella and Einbinder, Young & Apicella.

Brian C. McDonald, Bulkley, Richardson & Gelinas, Springfield, Mass., for defendants Metro Associates, Inc., Metro News, Inc., Metro Leasing, Inc., Lewis A. Black and Sara Black.

## ORDER

DAVID S. NELSON, District Judge.

The plaintiffs have filed this action seeking declaratory judgment, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, to the effect that the plaintiffs have not violated the Federal Racketeer Influenced and Corrupt Organizations Act (RICO)[1] or any other federal statute. The defendants have filed two motions to dismiss[2] pursuant to Fed.R.Civ.P. 12(b)(6) for lack of subject matter jurisdiction, or, alternately, in this court's discretion under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. The matter was referred to Magistrate Judge Alexander for a recommendation on the defendants' motions to dismiss.

On December 30, 1991, in a Findings and Recommendations report ("Findings"), the magistrate judge issued her findings that the RICO dispute was not ripe for judicial consideration, therefore, there was no federal question in this case. Magistrate Judge Alexander recommended dismissing this action under the discretion provided to this court by the Declaratory Judgment Act.

Having reviewed the magistrate's recommendations, as well as the submissions of the parties, and there being no opposition thereto, this court agrees with the Findings. That is, no federal question presently exists in this case and the discretion granted to the court under 28 U.S.C. § 2201 shall be invoked to deny jurisdiction. Accordingly, this court ALLOWS and ADOPTS the Findings and Recommendations and orders this complaint dismissed.

SO ORDERED.

## FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTIONS TO DISMISS (# 11, # 18)

December 30, 1991

ALEXANDER, United States Magistrate Judge.

The instant motions to dismiss have been referred to this Court. All defendants move this Court to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6) for lack of sub-

---

1. 18 U.S.C. § 1961.

2. The first motion to dismiss was filed by defendants Metro Associates, Inc., Metro News, Inc., Metro Leasing, Inc., Lewis A. Black, and Sara Black. (Docket # 11). The second motion to dismiss was filed by the remaining defendants Achille A. Apicella and Einbinder, Young & Apicella, P.C. (Docket # 18).

ject matter jurisdiction or, alternatively, in this Court's discretion under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

The following are the allegations of the complaint in summary form. Defendant Metro Associates, Inc., formerly known as Blackwood, Inc., was in the business of selling and distributing magazines, books and newspapers until February 22, 1990. Defendant Metro Leasing, Inc., formerly known as Blackwood Leasing, leased motor vehicles to Blackwood, Inc., until February 22, 1990. During 1989, plaintiff Hudson County News Company (Hudson) and Holyoke News Company, Inc. (Holyoke) began to negotiate with the Blackwood entities for the purchase of their assets. Several months of negotiations culminated in various agreements, which are now at issue. Under an Asset Purchase Agreement, Holyoke would purchase all of the assets of the Blackwood entities. Defendants Lewis A. Black and Sara Black, the sole shareholders of the Blackwood entities, formed Consulting Non–Competition Agreements with Holyoke. Lewis Black agreed to sell to other parties real estate that he had formerly leased to Blackwood. Holyoke, in turn, would sell some of the assets it acquired from the Blackwood entities to Hudson.

The dispute in this case arose from a disagreement over accounting. The purchase price and amounts payable under the non-competition agreements are linked to the sales of Blackwood, Inc. Defendants Achille A. Apicella and Einbinder, Young & Apicella, the accountants for the Blacks and the Blackwood entities, did not provide Blackwood's 1988 net sales figures, impairing for some months the calculation of the purchase price and non-competition agreements, which were estimated at the closing, with provisions made for adjustment upon determination of the sales figures. The dispute centers on whether Blackwood's sales to defendant Metro News, Inc. (Newstands), formerly known as The Newstands, Inc. and also purchased by the plaintiffs, are "inter-company" sales, thus excluding them from calculation of Blackwood's 1988 sales figures.

In the fall of 1990, defendants represented to plaintiffs that a higher purchase price was appropriate, including sales from Blackwood to Newstands in the calculation. Plaintiffs have filed a Demand for Arbitration, pursuant to a clause in the Asset Purchase Agreement for resolving disputes concerning the calculation of the sales figures. The Blackwood entities and the Blacks notified plaintiffs that they were considering filing a lawsuit against the plaintiffs under the Federal Racketeer Influenced and Corrupt Organizations Act (RICO) [1] and under Mass.Gen.L. ch. 93A if the plaintiffs did not pay them approximately $1.3 million to account for "inter-company" sales. In a letter dated November 12, 1990, from defendant Black's attorney to Holyoke, defendants made this representation, apparently basing their belief that a cause of action existed under RICO on plaintiffs' failure to inform defendants that the Asset Purchase Agreement and Consulting Non–Competition Agreements would exclude "inter-company" sales, given plaintiffs' knowledge that defendants wanted a higher purchase price and higher non-competition payments.

Since filing the complaint, defendants have changed counsel. Defendants' current counsel assert that they do not believe they presently have a claim under RICO. Defendants have filed an action against plaintiffs in Massachusetts Superior Court, asserting breach of implied covenants of good faith and fair dealing, misrepresentations and violation of Mass.Gen.L. ch. 93A.

Plaintiffs request that this Court issue a declaratory judgment pursuant to 28 U.S.C. § 2201 to the effect that plaintiffs have not violated RICO or any other federal statute. Plaintiffs request a declaration that they are not obligated to pay additional monies to the defendants on account of "inter-company" sales. Plaintiffs also request costs, including attorneys' fees of maintaining this action. The defendants request that this Court dismiss the action either for

---

**1.** 18 U.S.C. § 1961.

lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(6) or in its discretion under 28 U.S.C. § 2201.

This Court shall dismiss any action for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "[T]he Court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiffs.... Furthermore, the complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief." *Kuney International, S.A. v. DiIanni,* 746 F.Supp. 234, 236 (D.Mass.1990) (citations omitted).

■ The Declaratory Judgment Act represents an innovation in federal jurisprudence, whereby a party who has been threatened with a lawsuit may remove the hindrance of this threat to that party's ability to conduct affairs by obtaining in federal court a declaration of nonliability to the threatening entity. *See* C. Wright, A. Miller, M. Kane, 10A Federal Practice and Procedure § 2751 (2d ed. 1983). The act provides in part:

> In a case of *actual controversy* within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). The act does not provide an independent source of federal jurisdiction without regard to the underlying dispute. Rather, the trial court must look to the nature of the underlying dispute. "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the char-

acter of the threatened action ... which will determine whether there is federal-question jurisdiction in the District Court." *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291, 298 (1952); *see also Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 19, 103 S.Ct. 2841, 2851, 77 L.Ed.2d 420, 437 (1983).[2] If the threatened action by the declaratory judgment defendant does not present a federal question, this Court has no subject matter jurisdiction in a declaratory judgment action between non-diverse parties. *See Playboy Enterprises, Inc. v. Public Service Commission,* 906 F.2d 25, 29 (1st Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990); *Nashoba Communications Ltd. Partnership No. 7 v. Danvers,* 893 F.2d 435, 437–38 (1st Cir. 1990).

■ The preemptive and contingent nature of declaratory judgment actions spawns heightened demand for careful judicial attention to the constitutional limitations to federal jurisdiction under Article III,[3] as well as to derivative prudential doctrines, such as ripeness. *See Wycoff,* 344 U.S. at 241–43, 73 S.Ct. at 239–40, 97 L.Ed. at 294–96; *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 828–29 (1941); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 893 (9th Cir.1986). Guarding against the institutional dangers of treading too far into these troubled waters, Congress provided that courts need only issue declaratory judgments in their discretion. *See Wycoff,* 344 U.S. at 241, 73 S.Ct. at 239, 97 L.Ed. at 294–95; *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620, 1625 (1942), *reh'g denied,* 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562 (1942). The concerns underlying these issues overlap considerably, and the inquiries are not precisely determinate. *See Maryland Casualty,* 312 U.S. at 273, 61 S.Ct. at 512, 85 L.Ed. at 828–29

---

**2.** The federal question statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

**3.** The Constitution limits federal jurisdiction to "cases" or "controversies." U.S. Const. Art. III, § 2.

("The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree...."); C. Wright, A. Miller & E. Cooper, 13A Federal Practice and Procedure § 3532, 113 (2d ed. 1984) (noting the difficulties and value judgments involved in applying the ripeness doctrine).

■ Because the threatened lawsuits that declaratory judgment actions seek to prevent are merely potential, courts often must grapple with the question of whether the declaratory judgment plaintiff has yet incurred the constitutionally cognizable injury that is necessary for there to be a case or controversy. This circuit has followed those that look to see if the plaintiff has a "reasonable apprehension" that the threatened lawsuit will transpire. *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 874 (1st Cir.1971); *see also Crown Drug Co. v. Revlon, Inc.*, 703 F.2d 240, 244 (7th Cir.1983); *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d 938, 944 (9th Cir. 1981). In this case, however, while litigation has commenced, there is uncertainty as to whether the declaratory judgment defendant would bring the threatened RICO claim, which would be a requisite to federal question jurisdiction. Thus, while this Court is convinced that there is an actual controversy between the parties, the possibility that the RICO seed in the controversy may not come to fruition implicates the ripeness doctrine. The cases measuring the reasonable apprehension that an entire legal controversy may transpire should, thus, have instructive value for this Court's ripeness determination for the RICO seed in this controversy.

■ The problem of ripeness is one of determining if the timing of the presentation of an issue to a court is so premature as to unnecessarily entangle the court in the resolution of an issue predicated upon a mere contingency. *See Thomas v. Union Carbide Agricultural Products, Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 3332–33, 87 L.Ed.2d 409, 419–20 (1985). This Court must determine whether the "claim ... involve[s] 'contingent future events that may

not occur as anticipated, or indeed may not occur at all,' " *id.* (quoting C. Wright, A. Miller & E. Cooper, 13A Federal Practice and Procedure § 3532 (1984)), or whether the claim involves "effects felt in a concrete way." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691 (1967). The inquiry is twofold, requiring evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515, 18 L.Ed.2d at 691.

The defendant refers this Court to *United States ex rel. LeBlanc v. Raytheon Co.*, 729 F.Supp. 170 (D.Mass.1990), *aff'd*, 913 F.2d 17 (1st Cir.1990). In that case, the relator was bringing a *qui tam* suit on behalf of the United States government, which had reserved its right to object to the relator's ability to recover a percentage of the proceeds from a successful suit. When the relator moved to strike this reservation, challenging the government's authority, the Court held that the issue was not ripe, as it was by no means clear that the government would ever actually make the objection. *Id.* at 172. Judge Tauro interpreted the relator's motion as "a request for a declaration that he is authorized to proceed under the False Claims Act." *Id.* at 173. Thus, as in the case *sub judice*, where it was not clear if the seedling of an issue within a lawsuit would germinate, Judge Tauro held:

> Where, as here, the challenged conduct is only threatened, "[t]he plaintiff must show that 'he has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' "

*Id.* at 172 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675, 684 (1983)).

■ Application of the reasonable apprehension test, *Sweetheart Plastics*, 439 F.2d at 874, does not change the tenor of the inquiry. Courts have found a plaintiff's showing of a reasonable apprehension of facing a lawsuit by the declaratory judg-

ment defendant to be insufficiently substantial where the defendant's communication of the possibility of a lawsuit to the plaintiff is phrased in the equivocating language of potentialities or is susceptible to varying interpretations.[4] It is only where the potential lawsuit by the declaratory judgment defendant is likely to chill a plaintiff's activities that courts will require a less substantial showing of reasonable apprehension to find the dispute ripe. *Societe de Conditionnement en Aluminium v. Hunter Engineering*, 655 F.2d 938, 944 (9th Cir.1981) (plaintiff manufacturing an item where defendant claims that plaintiff is infringing defendant's patent).

In the case *sub judice*, the possibility of a RICO suit will not chill the plaintiffs' activities in the sense that a threatened patent infringement suit can chill the manufacture of a product. The plaintiffs "ha[ve] shown no way in which a declaratory judgment would enable [them] to change [their] conduct to avoid damages which have not yet accrued." *Board of Regents for Northwest Missouri State University v. MSE Corp.*, 1990 WL 212098, *3, 1990 U.S.Dist.Lexis 17344, *5 (W.D.Mo. Nov. 20, 1990). The plaintiffs are "simply in the position of one expecting to be sued for past alleged transactions." *Hanes Corp. v. Millard*, 531 F.2d 585, 592 (D.C.Cir.1976) (dismissing declaratory judgment action in patent infringement case where patent expired, thus, terminating any chilling effect on plaintiff's future conduct).[5] The letter from the defendants' counsel states that they were merely considering filing a RICO

---

**4.** *See Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir.1987) (defendants sent plaintiffs a letter stating that plaintiffs' use of microwave antennae was in violation of Federal Communications Act and that, to avoid litigation, plaintiffs must remove the equipment, sign an agreement to stop using the antennae and pay $300 as an out of court settlement); *Alcan Aluminium Ltd. v. Department of Revenue*, 724 F.2d 1294 (7th Cir.1984) (request of information pursuant to tax audit); *D'Imperio v. United States*, 575 F.Supp. 248 (D.N.J.1983) (Environmental Protection Agency sent letter to plaintiffs notifying them of potential liability under Comprehensive Environmental Response, Compensation, and Liability Act); *Crown Drug Co. v. Revlon, Inc.*, 703 F.2d 240 (7th Cir.1983) (defendant's lawyer represented possibility of suing in equivocating language); *American Cyanamid Co. v. Ethicon, Inc.*, 443 F.Supp. 46 (S.D.N.Y. 1977) (representations by defendant that plaintiff "better look out" and that defendant would probably file suit); *American Needle and Novelty Co. v. Schuessler Knitting Mills, Inc.*, 379 F.2d 376 (7th Cir.1967) (letter from defendant's attorney stating that item made by plaintiff "may conflict" with defendant's patent, requesting sample for inspection and stating that others in plaintiff's position had taken licenses from plaintiff).

**5.** The plaintiffs, in urging this Court to exercise its discretion in their favor, place much reliance upon *State Farm Fire and Casualty Co. v. Taylor*, 118 F.R.D. 426 (M.D.N.C.1988). In that case, the court discussed the process of determining if entertaining a declaratory judgment suit would serve a practical purpose:

> A useful purpose may be served if the party entitled to bring a coercive action *fails* or *delays* in bringing it. A declaration of rights and obligations is useful if it prevents the accrual of damages. Additionally, a declaration may be useful if it relieves a party from acting at his peril while uncertain of his legal rights because another party is yet to bring a coercive action.

*Id.* at 429 (emphasis added). The plaintiffs assert that the defendants have failed or delayed in bringing their RICO claim. This passage, however, requires some delimitation.

The sentences of this passage should not be taken in isolation. Where the declaratory judgment defendant fails or delays in bringing a claim, a useful purpose *may* be served in hearing the claim. By contrast, where damages will accrue while a defendant allows the enforcement action to languish, a useful purpose *is* served in hearing the case, with certainty. As in patent infringement cases, the accrual of damages chills a plaintiff's conduct. The third sentence is somewhat amorphous. Insofar as acting at one's peril is consistent with factors that would chill a plaintiff's conduct, as in a patent infringement case, this Court accepts the sentence. Insofar as the plaintiffs here assert that they are in a state of peril because of uncertainty over whether they will face a RICO suit, the sentence requires delimitation within the boundaries of the "reasonable apprehension" standard.

The plaintiffs also refer this Court to the Seventh Circuit's language that "a federal court *may* grant a declaratory judgment to prevent one party from *continually* accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749 (7th Cir.1987) (emphasis added). While this Court would agree with that proposition, there has been neither an allegation of continuous accusation nor an allegation of concrete detriment in this case.

suit. Since the writing of the letter, defendants have changed counsel and have actually filed a suit under state law, neglecting to bring a cause of action under RICO. The requisite substantial showing of reasonable apprehension is lacking. There is no sense in which this issue can be said to be fit for judicial determination or in which declining to rule on the issue will pose hardship to the plaintiffs. *Abbott Laboratories*, 387 U.S. at 148, 87 S.Ct. at 1515, 18 L.Ed.2d at 691. As in *LeBlanc*, while a legal controversy between the parties exists, there is no immediate danger that the RICO seed will come to fruition. *LeBlanc*, 729 F.Supp. at 172. Without the RICO dispute, there is no federal question in this case, leaving the parties to harvest in the more acclimated state forum those fruits of their controversy that have already ripened.

 Other factors also warrant dismissing the case under the discretion provided this Court by the Declaratory Judgment Act. In determining if it should exercise its discretion to grant a declaratory judgment, it is appropriate for a federal trial court to consider principles of equity, comity and federalism. *Cf. Green v. Mansour*, 474 U.S. 64, 72–73, 106 S.Ct. 423, 427–28, 88 L.Ed.2d 371, 379–80 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 900, 88 L.Ed.2d 933 (1986) (declaratory judgment remedy is appropriate where it would circumvent limitations placed on federal jurisdiction by the abstention doctrine or by the Eleventh Amendment); *see also Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175, 86 L.Ed. at 1625 ("it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court, presenting the same issues, not governed by federal law, between the same parties"). "[I]n the exercise of its discretion, the court may deny declaratory relief if the state courts can more effectively resolve the claim." *Gilbert v. Cambridge*, 745 F.Supp. 42, 53 (D.Mass.1990), *aff'd*, 932 F.2d 51 (1st Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 192, 116 L.Ed.2d 153 (1991) (citation omitted). This Court should determine "whether a judgment will serve a useful purpose in either clarifying and settling legal relations or finally ending the controversy giving rise to the proceedings." *Associated General Contractors v. Boston District Council of Carpenters*, 642 F.Supp. 1435, 1441 (D.Mass.1986) (citation omitted). Avoiding piecemeal litigation is also an appropriate goal in the Court's discretionary calculus. *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 310 (1st Cir.1986).

 This Court should also defer to the right of an injured party to choose the forum in which to litigate the action. *See Koch Engineering Co. v. Monsanto Co.*, 621 F.Supp. 1204, 1207 (E.D.Mo.1985). Where a federal declaratory judgment action merely anticipates a parallel state action in order to resolve issues in the forum of the declaratory judgment plaintiff's choosing, courts should exercise their discretion to deny jurisdiction. *State Farm*, 118 F.R.D. at 430. "The declaratory judgment remedy is *not a tactical device* whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse." *Id.* at 431 (emphasis in original). A federal court should not allow a party to use a declaratory judgment action as a means to win a race to *res judicata*. *American Home Assurance Co. v. Insular Underwriters Corp.*, 494 F.2d 317, 320 (1st Cir.1974).

The plaintiffs argue that piecemeal litigation would not be a problem in this case, urging this Court to hear the claims in the pending state court action, under pendant, or supplemental, jurisdiction. 28 U.S.C. § 1367. The defendants, however, are correct in arguing that "pendant jurisdiction is a doctrine of discretion." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966). Under the recently enacted statutory form of supplemental jurisdiction, courts still have discretion to decline to hear pendant state claims, for among other reasons, if the state claims "substantially predominate[ ] over" the federal claim. 28 U.S.C. § 1367(c)(2). In the instant case, the RICO claim is attenuated to the point of being

hypothetical. Exercising pendant jurisdiction would also amount to a use of the declaratory judgment action to deprive the defendants of their right to choose the forum in which to seek recovery for their alleged injuries. Snatching this local commercial dispute from the province of the state judiciary would be inappropriate.

That conclusion leaves this Court with the prospect of piecemeal litigation that would not resolve the heart of the dispute. The defendants, who chose a local forum to hear local claims, would find themselves litigating in a federal forum, with the possibility of some *res judicata* effect of the federal proceeding impacting upon the state proceeding. Any hypothetical benefit of exercising jurisdiction over this action is surely outweighed by the intrusions upon the defendants' rights as litigants and upon the prerogative of the state judiciary in resolving local disputes.

The Declaratory Judgment Act provides a limited remedy that accommodates the quirks of the interaction between our constitutionally circumscribed federal jurisdiction and our expansive systems of state jurisdiction. After weighing the factors relevant to this accommodation, this Court finds that, in the case *sub judice*, exercising jurisdiction would require judicial determination of an issue whose existence is, at this point, in the realm of the hypothetical. Even were the RICO issue ripe, determination of it either would have no efficacy in resolving the underlying dispute or would require such intrusion into the declaratory judgment defendants' rights to choose their forum and into the jurisdiction of the state court, on such tenuous grounds, that the discretionary authority of this Court to deny jurisdiction under the Declaratory Judgment Act demands invocation.

Accordingly, based on the aforementioned, this Court hereby allows the motions to dismiss.

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).