In re ENRON CORP., et al., Debtors.

Thresa A. Allen, et al., Plaintiffs,

v.

Official Employment–Related Issues Committee, et al., Defendants.

Bankruptcy No. 01–16034(AJG). Adversary No. 03–02084(AJG).

United States Bankruptcy Court, S.D. New York.

Aug. 28, 2003.

Wilmer, Cutler & Pickering, Andrew N. Goldman, Duane D. Morse, Jeremy S. Simon, Nicole Walter, of Counsel, New York City, Attorneys for the Original Plaintiffs.

Locke, Liddell & Sapp, LLP, Kenneth E. McKay, Patricia Williams Prewitt, W. Steven Bryant, of Counsel, Houston, TX, Attorneys for Intervenor Plaintiffs Martin Cuilla, James Fallon, Gary Hickerson, Rodney Malcolm, John Massey, Kevin Ruscitti, Tim DeSpain, Brad McKay and Laura Luce.

Baker & Hostetler, LLP, Matthew H. Charity, Edward L. Ripley, Shari L. Heyen, of Counsel, New York City, Attorneys for Intervenor Plaintiff.

Ogden, Gibson, White, Broocks & Longoria, L.L.P., Laura Gibson, of Counsel, Houston, TX, Attorneys for Intervenor Plaintiff Jay Webb.

Day, Berry & Howard LLP, Thomas D. Goldberg, of Counsel, Stamford, NY, Attorneys for Intervenor Plaintiff Matthew H. Motley.

Mark A. Brandoff, P.C., Mark A. Brandoff, of Counsel, Jericho, NY, Attorney for Intervenor Plaintiffs Harpreet S. Arora, Gautam Gupta, Rogers Herndon and John D. Suarez.

McClain, Leppert & Maney, PC, Mark Maney, David P. McClain, of Counsel, Houston, TX, Special Litigation Counsel for the Enron Employee Committee Two Houston Center.

## MEMORANDUM DECISION AND ORDER REGARDING ENRON EMPLOYEE COMMITTEE'S MOTION TO DISMISS DECLARATORY JUDGMENT ACTION

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### I. INTRODUCTION

On February 6, 2003 (the "Complaint Filing Date"), a Complaint for Declaratory Judgment (the "Complaint") was filed in this Court by certain recipients (each a "Plaintiff" and collectively, the "Plaintiffs") of bonuses (each a "Bonus" and collectively, the "Bonuses") that previously had been paid by defendants Enron Corp., Enron North America Corp., Enron Net Works, L.L.C., and certain of their affiliated entities (collectively, "Enron" or the "Company") to certain Enron employees. Pursuant to the Complaint, Plaintiffs request that the Court: (i) declare that the Bonuses are valid, nonpreferential and non-avoidable payments made by the debtors without any intent to defraud, and in exchange for which the debtors received reasonably equivalent value; (ii) declare that the Bonuses may not be avoided or recovered under sections 544, 547, 548 or 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") or any other applicable law; (iii) declare that the Plaintiffs are entitled to retain the full amount of the Bonuses received from Enron; and (iv) award Plaintiffs such additional declaratory relief and other relief as shall be found to be appropriate and just.

On March 28, 2003, the Official Employment–Related Issues Committee of Enron Corp., et al. (the "Employee Committee") responded by filing the Enron Employee Committee's Motion to Dismiss Declaratory Judgment Action (the "Motion to Dismiss") in this Court, pursuant to which the Employee Committee requests that the Court decline Plaintiffs' motion for declaratory judgment and dismiss the Complaint. A hearing on the matter was held before the Court on April 25, 2003.

After due deliberation and for the reasons set forth below, the Motion to Dismiss is granted.

### II. JURISDICTION

The Court has jurisdiction over this adversary proceeding (the "Adversary Proceeding") pursuant to § 1334(b) of title 28 of the United States Code. This Adversary Proceeding is a core proceeding pursuant to § 157(b) of title 28 of the United States Code. Venue is proper in the district of New York pursuant to §§ 1408 and 1409(a) of title 28 of the United States Code.

### III. FACTUAL BACKGROUND

Enron is a large, multifaceted national and international energy corporation with operations and financial interests across the United States and around the world. On December 2, 2001 (the "Enron Petition Date"), Enron and certain of its affiliated debtor entities (collectively, the "Debtors") filed voluntary petitions for relief under the Bankruptcy Code. Since the Enron Petition Date, Debtors have continued to operate their businesses as debtors in possession pursuant to § 1107(a) of the Bankruptcy Code. By order dated August 28, 2002, this Court assigned certain claims, including claims relating to the Bonuses, to the Employee Committee, pursuant to which the beneficiaries of any recovery on such assigned claims are certain former Enron employees who entered into a settlement agreement with Enron and who were not recipients of such Bonuses (the "Settling Enron Employees").

Plaintiffs are 176 former Enron employees, including the 160 original plaintiffs to this Adversary Proceeding and the 16 ad-

ditional intervening plaintiffs, who worked in or supported Enron's wholesale trading business. Enron agreed to pay certain employees, including the Plaintiffs, Bonuses in consideration of employment services, and in order to induce them to remain with the Company during the early stages of Enron's bankruptcy case so that the wholesale trading business could be sold as a going concern. The wholesale trading business was purchased by UBS AG in February 2002.

On or about January 8 and 9, 2003, counsel for the Employee Committee mailed letters (each a "Demand Letter" and collectively, the "Demand Letters") to each of 292 Bonus recipients, including the Plaintiffs, demanding repayment of the Bonuses within 30 days. Each letter stated that failure to remit the Bonus in its entirety, or to produce documentation establishing a defense to the avoidability of such Bonus, within 30 days "may result in the institution of a lawsuit against you." Plaintiffs filed the Complaint on February 6, 2003, one or two days prior to the end of the 30–day period.

On March 14, 2003, the Employee Committee filed an action in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Houston Bankruptcy Court"), against a single Plaintiff (the "First Committee Action"). On March 28, 2003, the Employee Committee filed a second action in the Houston Bankruptcy Court against 56 Bonus recipients, including 34 of the Plaintiffs (the "Second Committee Action"). The Employee Committee also filed the Motion to Dismiss in this Court on March 28, 2003. A third action was filed by the Employee Committee in the Houston Bankruptcy Court against an additional Bonus recipient on April 9, 2003 (the "Third Committee Action" and, together with the First Committee Action and the

Second Committee Action, the "Committee Actions"). On May 8, 2003, the Committee Actions were consolidated by order of the Houston Bankruptcy Court. On June 2, 2003, the Employee Committee filed a supplement to its Motion to Dismiss, asserting that all Bonus recipients of whom the Employee Committee was aware at that time had been sued in the Houston Bankruptcy Court.

## IV. *DISCUSSION*

The Court shall use its discretion when deciding whether to exercise declaratory judgment pursuant to the Declaratory Judgment Act, which Act is codified at 28 U.S.C. §§ 2201–2202. (the "DJA"). *Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Assoc., Inc. v. Local 38 of the Sheet Metal Workers Int'l Assoc.*, 208 F.3d 18, 22 (2d Cir.2000) (quoting *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1000 (2d Cir.1969)) ("It is well-settled that the trial court's decision to exercise declaratory judgment is a discretionary one."). The Supreme Court has characterized the DJA as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). "The Court must look at the litigation situation as a whole in determining whether it is appropriate for the Court to exercise its jurisdiction over the declaratory judgment action before it." *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F.Supp. 581, 585 (S.D.N.Y.1990). The Court "should exercise its jurisdiction only when the proposed action furthers the policies of the declaratory judgment statute." *Friedman v. Geller*, 925 F.Supp. 611, 613 (E.D.Wis. 1996) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir.1987)). Upon review of the applicable law and of the facts relating to this Adver-

sary Proceeding, the Court finds that the Complaint does not further the policies and represents an improper use of the DJA, compelling the Court to exercise its discretion to dismiss the Complaint.[1]

### A. The Complaint Represents an Improper Use of the Declaratory Judgment Act

■ The Second Circuit has articulated that when faced with a case of actual controversy, "the declaratory judgment procedure 'enables a party who is challenged, threatened or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of the plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability.'" *United States v. Doherty*, 786 F.2d 491, 498–99 (2d Cir.1986) (quoting Borchard, *Declaratory Judgments* 280 (2d ed.1941)). The principal criteria in determining whether the rendering of a declaratory judgment is appropriate are: "(i) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview*, 417 F.2d at 1001.

■ More specifically, numerous courts have indicated that the DJA is designed to enable parties to determine their rights prior to the accrual of damages, thereby allowing such parties to avoid engaging in conduct that will result in liability. *See Doherty*, 786 F.2d at 498 ("[T]he fundamental purpose of the DJA is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.'") (quoting *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir.1963)). *See also Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 72 (2d Cir.1991) ("Congress established the declaratory judgment procedure so that parties who were uncertain of their rights could adjudicate their claims *without first engaging in dubious conduct.*") (emphasis added); *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 397 (2d Cir.1975) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937) (determining that the purpose of the DJA is "to settle legal rights and remove uncertainty and insecurity from legal relationships *without awaiting a violation of the rights or a disturbance of the relationships.*")) (emphasis added); *In re Combustion Equip. Assoc., Inc.*, 838 F.2d 35, 37 (2d Cir.1988) ("The purpose of the [DJA] is to enable parties to adjudicate *disputes before either side suffers great damages.*") (emphasis added); *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 132 (S.D.N.Y.1994) ("A party has a right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity it will be sued by another party"); *Great Am. Ins.*, 735 F.Supp. at 585 (stating that declaratory

---

1. The Court notes that, in addition to the arguments addressed in this Memorandum Decision and Order, the Employee Committee has also asserted that: (i) the Complaint deprives the Employee Committee of its alignment as plaintiff; (ii) the Complaint deprives the Employee Committee of its right to choose its forum for bringing suit; (iii) the grouping of Plaintiffs is misleading and would lead to an inefficient pre-trial and trial process; and (iv) the Complaint ignores core claims of the Employee Committee. Although the Court need not reach these issues in dismissing the Complaint, it is likely that these issues could have been effectively addressed within the context of this Adversary Proceeding in the event that the Complaint was not dismissed.

judgment allows a party to have a controversy resolved promptly, "particularly where the delay in seeking judicial intervention will cause substantial prejudice to the declaratory judgment plaintiff.").

■ Given the DJA's fundamental purpose of allowing parties to seek adjudication of an issue such that the potential liability associated with a course of action may be determined prior to the accrual of damages, courts have held that "declaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Int'l Wire Group, Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, at *5, 2003 U.S. Dist. LEXIS 9193, at *15 (S.D.N.Y. June 2, 2003). *See also Gianni Sport Ltd. v. Metallica*, 00 Civ. 0937, 2000 WL 1773511, at *3–4, 2000 U.S. Dist. LEXIS 17339, at *10–11 (S.D.N.Y. December 4, 2000); *Gruntal & Co., Inc. v. Steinberg*, 837 F.Supp. 85, 89 (D.N.J.1993). "[D]eclaratory relief is inappropriate to adjudicate past conduct, such as when the damages have already accrued." 12 James Wm. Moore et al., *Moore's Federal Practice—Civil* § 57.04 (2003).

Although the parties and the Court, through its own efforts, have not found any cases directly on point, the above cases provide general principles relevant to this Adversary Proceeding. At the outset, the Court determines that all potential liability directly relating to the avoidance of the Bonuses had clearly accrued prior to the Complaint Filing Date. Enron paid the Bonuses at issue to all Plaintiffs before the Complaint Filing Date, and Plaintiffs' potential liability to the Settling Enron Employees has not increased since such date. Plaintiffs' have argued that the uncertainty created by a threatened lawsuit has impacted their ability to make financial decisions, yet the conduct, as articulated by Plaintiffs, that would arise out of such decisions would not result in an increase in Plaintiffs' potential liability to the Settling Enron Employees. Plaintiffs' potential liability to the Settling Enron Employees relating to the avoidance of the Bonuses is fixed, regardless of the timing of the adjudication of these matters. As of the Complaint Filing Date, Plaintiffs were simply in the position of parties expecting to be sued for alleged past transactions, similar to that of virtually any potential plaintiff threatened with a lawsuit concerning prior conduct. *See Hudson County News Co. v. Metro Assocs., Inc.*, 141 F.R.D. 386, 391 (D.Mass.1991).

Plaintiffs assert that, as of the Complaint Filing Date, they faced substantial prejudice by a prospective delay in suit because in receiving the Demand Letters, "a cloud has been placed over these individuals' [Plaintiffs'] finances which necessarily impacts their life decisions on a daily basis." Original Plaintiffs' Opposition to Motion to Dismiss at 16. The Court notes, as referenced previously, that the alleged harm resulting from the "uncertainty" faced by Plaintiffs is not related to any prospective actions Plaintiffs might take that would result in increased liability to the Settling Enron Employees, but rather from the impact on Plaintiffs' finances of the uncertainty as to whether Plaintiffs will have to return all or a portion of the Bonuses. The Court does not reach the issue as to whether the type of harm resulting from the uncertainty referenced above, rooted in Plaintiffs' finances as opposed to the underlying legal issues of whether the Bonuses should be avoided and the amount of Plaintiffs' potential liability to the Settling Enron Employees, could support the maintenance of an action under the DJA. However, assuming such harm could support the maintenance of a DJA action, the Court finds that Plaintiffs

have not established that Plaintiffs, either as a group or on an individual basis, faced a level of uncertainty or insecurity resulting from the Employee Committee's alleged delay in bringing suit sufficient to justify maintaining the declaratory judgment action.

The Employee Committee was given the specific mandate of addressing claims such as the avoidance of the Bonuses. Given this mandate and the publicity surrounding the payment of Bonuses, the assignment of the claims, and the Employee Committee's investigation into such claims, Plaintiffs were aware that there was a strong likelihood that they would be sued once the Employee Committee completed its investigation. Plaintiffs also knew that the Employee Committee's investigation was underway at the time of the Complaint Filing Date. Any avoidance action that might be brought by the Employee Committee regarding prepetition transfers, such as an action or actions for the avoidance of the prepetition Bonuses, would have to be commenced by December 2, 2003 (the " § 546 Avoidance Bar Date"), two years from the date of the Enron order for relief. 11 U.S.C. § 546 (2003). Any avoidance action that might be brought by the Employee Committee regarding postpetition transfers, such as an action or actions for the avoidance of the postpetition Bonuses, would have to be commenced within two years of the date that such Bonuses were paid (the " § 549 Avoidance Bar Dates" and, together with the § 546 Avoidance Bar Date, the "Avoidance Bar Dates"). 11 U.S.C. § 549 (2003). Although neither party has provided detailed information on the dates that postpetition Bonuses were paid, it is the Court's understanding that such Bonuses were generally paid within three months of the Enron Petition Date. Since the § 546 Avoidance Bar Date was only ten months after the Complaint Filing Date, and the

§ 549 Avoidance Bar Dates fell shortly thereafter, the Employee Committee's investigation would necessarily be completed and any suit commenced within that period of time. In fact, the Employee Committee has filed suit against all Plaintiffs in the Houston Bankruptcy Court as of June 2, 2003.

Except for asserting general, unsubstantiated allegations regarding the difficulties imposed by the uncertainty of a potential lawsuit, Plaintiffs have not established that as a group they would suffer any specific harm as a result of having to wait until the Avoidance Bar Dates to alleviate their doubts as to whether they would be sued, beyond those faced by virtually any other potential plaintiff who has been threatened with a lawsuit concerning past transactions. The generality and unsubstantiated nature of Plaintiffs' allegations prevent the Court from being able to reasonably conclude that waiting for the Avoidance Bar Dates would pose an undue hardship or create a level of uncertainty or insecurity for the Plaintiffs, either as a group or individually, that would warrant maintaining the declaratory judgment action.

Although the Complaint does not differentiate among the Plaintiffs in articulating the alleged hardship they faced in not knowing whether they would be sued by the Employee Committee, the Court recognizes that the Plaintiffs are in fact differently situated. If there existed individual Plaintiffs who had an immediate and pressing need for resolution of these matters, then those individuals could have presented their particular circumstances to the Court so that their specific needs could be considered. In determining whether an individual Plaintiff was substantially prejudiced by having to wait for the Avoidance Bar Dates, the Court would consider: (i) the amount of the Bonus paid to the Plaintiff; (ii) the overall financial wherewithal of

the Plaintiff; and (iii) the intended use of the Bonus by the Plaintiff such that immediate adjudication of the issues raised in the Complaint would be required. In the event that Plaintiffs had established that an individual or individuals had specific needs requiring the immediate adjudications of these issues, then the Court would have to determine whether the type of harm discussed above, rooted in Plaintiffs' finances as opposed to the underlying legal issues of whether the Bonuses should be avoided and the amount of Plaintiffs' potential liability to the Settling Enron Employees, could support the maintenance of an action under the DJA. The Court notes that Plaintiffs have not indicated the existence of such specific individuals or articulated the details of their particular circumstances, thus preventing the Court from determining whether individual Plaintiffs were prejudiced by having to wait for the Employee Committee to file suit.

▉ In summary, the Court does not find that Plaintiffs faced any specific hardship in waiting for the completion of the Employee Committee's investigation. The mere threat of future litigation, absent a substantiated, identifiable harm, does not bestow a level of uncertainty or insecurity upon Plaintiffs that would justify maintaining the declaratory judgment action in this Adversary Proceeding. The Court also finds that Plaintiffs have failed to establish that they risked increased liability to the Settling Enron Employees as a result of any ongoing conduct in which Plaintiffs were engaged, thereby rendering the Complaint an attempt to adjudicate past conduct that falls outside the fundamental purpose of the DJA of allowing plaintiffs to avoid the accrual of avoidable damages. *See Doherty*, 786 F.2d at 498. Since Plaintiffs have not demonstrated that they faced substantial prejudice as a result of a delay in suit, declaratory judgment is rendered inappropriate and the Court is compelled to exercise its discretion to dismiss the Complaint.[2]

**2.** The Court notes that the Employee Committee sent the Demand Letters to the Plaintiffs on January 8 and 9, 2003, stating that the failure of Plaintiffs to remit payment of their Bonus amount or to establish a defense to the avoidability of the challenged payment within 30 days (the "Notice Period") might result in the commencement of legal action. Plaintiffs proceeded to file the Complaint on February 6, 2003, one or two days prior to the termination of the Notice Period. Since Plaintiffs have failed to establish that they faced a risk of increased liability to the Settling Enron Employees or other prospective harm after the Complaint Filing Date, and given the fact that Plaintiffs filed the Complaint immediately prior to the conclusion of the Notice Period, it appears likely that the Complaint was a procedural maneuver designed to ensure that Plaintiffs would initiate the Adversary Proceeding in this Court before the Employment Committee filed a competing action or actions in the Houston Bankruptcy Court. Courts have viewed the procedural manipulation of forums as an improper use of the DJA. "When the declaratory judgment action has been trig-gered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum ... As Mr. Justice Brennan has observed, 'the federal declaratory judgment is not a prize to the winner of a race to the courthouses.'" *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J. dissenting)). See also *Great Am. Ins.*, 735 F.Supp. at 586 ("The Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions ... In fact, the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."). Although not dispositive, the timing of the Complaint Filing Date raises concerns that the Complaint was motivated by an attempt to preempt jurisdiction, which is not in accordance with the fundamental purposes of the DJA.

### B. Plaintiffs Incorrectly Rely Upon the First Filed Rule and Arguments Concerning the Appropriateness of this Court as a Venue

 Plaintiffs rely heavily upon the rule that "where there are two competing lawsuits, the first suit should have priority, absent the showing of a balance of convenience ... or ... special circumstances ... giving priority to the second." *GT Plus, Ltd. v. Ja–Ru, Inc.*, 41 F.Supp.2d 421, 423 (S.D.N.Y.1998) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989)). Plaintiffs argue that, since the Complaint was filed prior to the Committee Actions, a strong presumption exists in favor of the Complaint. Plaintiffs also discuss at length their assertion that this Court is the most appropriate venue to adjudicate the matters raised in the Complaint. However, the threshold issue for the Court to determine in this Adversary Proceeding is whether the Complaint is within the purposes and purview of the DJA. Absent an affirmative finding that the Complaint is an appropriate use of the DJA, issues relating to the "First Filed Rule" and venue are rendered moot.

As discussed above and for the reasons set forth herein, this Court has determined that the Complaint represents an inappropriate use of the DJA, compelling the Court to exercise its discretion to dismiss the Complaint. In order for the First Filed Rule to be applicable to this Adversary Proceeding, the Complaint must be the first of two legitimately filed actions. Since the Court is dismissing the Complaint as a misapplication of the DJA, the First Filed Rule is moot. Similarly, issues of venue are irrelevant to an inappropriately filed action and need not be addressed by this Court.

### V. CONCLUSION

This Court finds that the Complaint represents an improper use of the DJA. As of the Complaint Filing Date, Plaintiffs were solely in the position of parties expecting to be sued for past transactions, and the Court does not find that a delay in the filing of suit risked Plaintiffs accruing increased liability to the Settling Enron Employees as a result of any conduct in which Plaintiffs were engaged. Moreover, the Court does not find that Plaintiffs faced substantial prejudice as a result of the uncertainty of a prospective lawsuit that would justify maintaining the declaratory judgment action. Thus, the Complaint is beyond the purposes and purview of the DJA, compelling this Court to exercise its discretion to dismiss the Complaint.

Therefore, for the reasons set forth herein, it is hereby:

ORDERED, that the Complaint and this Adversary Proceeding are hereby dismissed.