KerN, Leila R., J.

MEMORANDUM OF DECISION AND ORDER ON THE PLAINTIFFS’ MOTION FOR A RULING INTERPRETING THE TERM SHEET AND THE DEFENDANTS’ MOTION TO ENFORCE THE SETTLEMENTAGREEMENT MEMORIALIZED BY THE TERM SHEET

On November 2, 2005, the plaintiffs, National Grid and Boston Gas Company, executed a Term Sheet with the defendants, Certain Underwriters at Lloyd’s London, memorializing a settlement in civil action 99-00467-B. Pursuant to the Term Sheet, the defendants agreed to pay National Grid $16 million, while the plaintiffs agreed to: (1) release certain claims against the defendants; and (2) provide an indemnity for future claims against the defendants. The parties now dispute the scope of the release and indemnity provisions set forth in the Term Sheet. The matter is now before this court on the plaintiffs Motion for a Ruling Interpreting the Term Sheet and Lloyd’s Motion to Enforce the Settlement Agreement Memorialized by the Term Sheet.
For the reasons discussed below, Lloyd’s Motion to Enforce the Term Sheet is ALLOWED. Any dispute involving the scope of the indemnity set forth in the Term Sheet must be resolved on a case-by-case basis when such a claim arises.

BACKGROUND

The following facts are set forth in the motions and accompanying affidavits.
Plaintiff National Grid comprises Massachusetts Electric Company, New England Power Company, Narragansett Electric Company, Granite State Electric Company, and New England Electric System. The underlying action concerns the plaintiffs’ insurance coverage claims for costs allegedly incurred for the investigation and remediation of certain hazardous waste sites.
The parties executed the Term Sheet on November 2, 2005. The Term Sheet included the following relevant provisions:
3. Subject to paragraph 5, NGRID on behalf on itself, and on behalf of all other past and present subsidiaries and affiliates, other controlled entities and other entities that it has the power to deal on behalf of (as will be more fully defined in the settlement agreement) (together “NGRID Entities”) will release: . . . [certain claims].
5. The form of the releases referenced in paragraphs 2, 3, and 4 above, and other provisions of the Settlement Agreement including, without limitation, the indemnity, shall be in substantially the form of the London Market’s standard form “Policy Buy-Back Settlement Agreement” previously provided to NGRID’s settlement counsel subject to final agreement regarding the precise language to be used to give effect to the settlement reached between NGRID and Underwriters and to address other concerns discussed by the Parties.
7. Subject to paragraph 5 above, NGRID will provide the London Market (including Underwriters) with a complete, full, uncapped indemnity protecting the London Market (including Underwriters) against any claims by third parties relating in any way to the releases referenced in paragraphs 2 to 4 above (inclusive) including, without limitation to the generality of the foregoing, Underwriters’ NGRID Policies and the Company Market NGRID Policies. In conjunction with such an indemnity provision, the London Market will provide an agreement not to initiate any claims for contribution, apportionment or subrogation relating to the released claims and/or payment of the Settlement Amount, provided always that this term shall not prevent the London Market seeking and prosecuting any reinsurance recoveries they may be entitled to or to raising such a claim in defense of or response to a third parly contribution (or similar) claim made against them.
Since the parties executed the Term Sheet, they have continued to negotiate the final wording of the agreement. In March 2006, the parties reached an impasse. The impasse arose from dispute over the claims that National Grid purported to release and the scope of the claims for which National Grid was required to provide an indemnity

DISCUSSION

I. The Term Sheet Is Enforceable

On the eve of trial, the parties jointly reported to this court that they had reached a settlement. Where the parties report a matter as settled, this court has the power to enforce that settlement. Dankese v. Defense Logistics Agency, 693 F.2d 13, 16 (1982) (“It is well established, therefore, that a trial court retains an inherent power to supervise and enforce settlement agreement entered into by parties to an action pending before the court”); see also Correia v. DeSimone, 34 Mass.App.Ct. 601, 604 (1993) (upholding oral settlement, “It defies logic and fundamental principles of fairness to allow a represented party who has sought justice in a forum to contradict and undermine an [oral] agreement it reached and acknowledged in that same forum, especially when the judge and other *727 litigants appear to have relied on that acknowledgment”).
As the execution of the Term Sheet is the basis upon which the parties reported the matter settled, this court will enforce the settlement if it contains all materials terms. See Peters v. Wallach, 366 Mass. 622, 628 (1975); Goren v. Royal Investments, Inc., 25 Mass.App.Ct 137, 140 (1987) (finding that initial agreement covering all material points was enforceable and that the execution of the final agreement was a formality). After reviewing the Term Sheet, this court finds that it represents an agreement on all material terms, and therefore is an enforceable contract. The defendants therefore shall pay the plaintiffs the amount set forth in the Term Sheet. The plaintiffs are bound by the indemnity provision set for in Paragraph 7, the details of which are discussed below.

II. Interpretation of the Term Sheet

Pursuant to the Term Sheet, the plaintiffs agreed to provide a release of NGRID policies on behalf of: (a) NGRID; (b) all other past and present NGRID subsidiaries and affiliates; (c) other NGRID controlled entities; and (d) other entities that NGRID has the power to deal on behalf of. See Paragraph 3. In addition, the plaintiffs agreed to provide an indemnity for all third-party claims relating in any way to the releases set forth in Paragraph 3. Paragraph 7 provides that the plaintiffs will provide the defendants “with a complete, full, uncapped indemnity . . . against any claims by third parties relating in any way to the releases referenced in paragraphs 2 to 4 . . .” In exchange, the defendants agreed to pay the plaintiffs sixteen million dollars.
The interpretation of these two provisions creates four scenarios. The first scenario occurs when the third-party claim arises from an NGRID entity, but does not relate in any way to the named release.[1] The second scenario arises when the third-party claim arises from a non-NGRID controlled entity and does not relate in any way to the named release. Under these first two scenarios, the plaintiffs need not indemnify the defendants.
The third scenario arises when the third party’s policy was released in Paragraph 3, i.e. made on behalf of an NGRID controlled entity as described in Paragraph 3, and the claim relates to the release. Under the third scenario, the plaintiffs must indemnity the defendants.
The fourth scenario arises when the third-party claim arises from a non-NGRID controlled entity, but relates in some way to the release. The result in this circumstance is ambiguous, fact specific, and the main source of the present motions. As such, the plaintiffs request, effectively via declaratory judgment, that this court determine whether an indemnity is required under the fourth scenario. The issue, however, is not ripe for judicial review. Hudson County News Co. v. Metro Associates, Inc., 141 F.R.D. 386, 390 (D.Mass. 1992) (“The problem of ripeness is one of determining if the timing of the presentation of an issue to a court is so premature as to unnecessarily entangle the court in the resolution of an issue predicated upon a mere contingency”). Although there is a real dispute of a legal interest, as no third-party claim has arisen that will inevitably lead to litigation, there is no actual controversy. See Gay & Lesbian Advocates & Defenders v. Attorney General, 436 Mass. 132, 134-35 (2002) (actual controversy likely to lead to litigation is necessary for a declaratory judgment action to exist).
Therefore, at the present juncture, this court cannot determine the scope of the indemnity owed to the defendants. Moreover, absent a claim by a third party, this court cannot make an ad-hoc determination as to which of the four scenarios would apply. Hudson County News Co., 141 F.R.D. at 390. Should a third-party claim arise, future litigation will likely involve: (1) whether the third party is a National Grid controlled entity as described in Paragraph 3; and, (2) whether the claim relates in a way to the releases. Given that each inquiry will be fact specific, the parties must resolve this issue on a case-by-case basis.

ORDER

For the reasons discussed herein, the court ORDERS that the Term Sheet is enforceable. As no third-party claim has arisen, any dispute involving the scope of the indemnity set forth in the Term Sheet is not ripe for determination at this time and must be resolved on a case-by-case basis.

For example, the Term Sheet does not require the plaintiffs to indemnify the defendants for a third-party claim that arises from something entirely outside the scope of the underlying litigation, i.e. litigation of a separate insurance policy.